IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JANA K. LANDRY, individually, and as next of kin and personal representative of Matthew Conard Nelson (deceased), <br><br> *Plaintiff,* <br><br> v. <br><br> STEVEN SPERRY in his individual and official capacity; BRYAN COLLIER only in his official capacity; MICHAEL SEALE, PILAR LABORDE-LAHOZ, CONRAD GIBBY, SYED AZIZ UR-RAHMAN, SUNIL ATHAVALE, SHARON LAMBI, ROSEMARY OJIH, each in their individual capacities; HARRIS COUNTY; DAVID CUNNINGHAM; JED SILVERMAN; and DOES 1-10 in their individual and official capacities, <br><br> *Defendants.* | **CASE NO.: 4:17-cv-370** <br><br> **COMPLAINT FOR DAMAGES** <br><br> **JURY DEMANDED** |

## ORIGINAL COMPLAINT

**COMES NOW**, Plaintiff Jana K. Landry, individually, and as next of kin and personal representative of Matthew Conard Nelson (deceased) ("LANDRY"), and files this Original Complaint for violations of federal and state constitutions, statutes, and common law committed by public and private Defendants that led to the death of her son, Matthew Conard Nelson, and respectfully shows the Court as follows.

## I. INTRODUCTION

1.     Matthew Conard Nelson ("NELSON"), deceased, committed suicide while in custody of the Texas Department of Criminal Justice. NELSON was sentenced to serve sixty-three (63)

years for possession of crystal meth. While in custody of Harris County, NELSON attempted to commit suicide three times. Harris County physicians and a physician's assistant prescribed several psychoactive drugs each with known side effects of causing or worsening depression and increasing or inducing suicidal behavior. Harris County and its employees supplied NELSON with drugs rather than with psychotherapy to treat his suicidal depression. NELSON was transferred to the Texas Department of Criminal Justice and committed suicide that day.

2.      Several crystal meth users stayed at NELSON's home on a transient basis. On the day NELSON was arrested, police searched his home for stolen firearms and ammunition. A police officer searched under NELSON's mattress and discovered a pill container that the officer did not believe contained firearms or ammunition. The officer opened the pill container and found the crystal meth for which NELSON was arrested. Police had no probable cause to open the pill container and could not establish ownership of the pill container nor its contents.

3.      NELSON's two criminal defense attorneys failed to move to suppress the pill container before or during trial due to police lacking probable cause to search the pill container. The two attorneys also failed to call NELSON's girlfriend to testify despite her claim of owning the crystal meth. Instead, the two attorneys had been paid a flat fee for their services, lost motivation to zealously defend NELSON, and proceeded to make numerous mistakes to which they later admitted under examination. During a recess in the middle of trial, the two attorneys attempted to coerce NELSON to accept a plea bargain of five years in prison despite NELSON's insistence that he was innocent and his girlfriend's admission of guilt. NELSON fled the courthouse during the recess and was subsequently convicted *in absentia* and sentenced to 63 years, which due to his age of 37 was in effect a life sentence.

4.      NELSON attempted suicide on the day he was recaptured by climbing on a counter at Harris County Jail and jumping backwards to break his neck. NELSON again attempted suicide while in custody of Harris County by cutting his neck with a razor, and a third time by running head-first into a cinderblock wall with enough force to crack his skull. Harris County put NELSON on suicide watch after his first attempt but after his later attempts to kill himself, Harris County only treated his physical injuries, prescribed depression-inducing drugs, and returned him to his cell. NELSON complained of claustrophobia on the day he was transferred to the Texas Department of Criminal Justice. Rather than evaluate NELSON's psychiatric history or immediate psychiatric complaint, the correctional officer gave NELSON his evening meal and left him in his cell. NELSON was later discovered hanging from a light fixture in his cell having turned a bed sheet into a makeshift noose.

5.      NELSON was in the wrong place and at the wrong time. Several institutions each with a duty to protect people like NELSON failed. Police exceeded the scope of the search warrant. His attorneys breached their fiduciary duty to put NELSON's interests ahead of their own. Harris County physicians treated NELSON's with drugs even after the drugs proved to be ineffective. Harris County and the Texas Department of Criminal Justice did not monitor NELSON to guard against future suicide attempts even when he begged for help.

6.      This civil action is brought pursuant to federal and state law by LANDRY individually and as NELSON's mother, next of kin, and personal representative, against Defendants for their numerous failures to protect and treat NELSON, an innocent man who had a documented history of depression, self-harm, and suicide attempts, and who had no opportunity to seek help for himself, and injuries they caused LANDRY and NELSON therefrom.

## II. JURISDICTION & VENUE

7.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343. Federal question jurisdiction arises pursuant to 42 U.S.C. §§ 1983, 12188(a).

8.      This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a) because they arise under Texas state law, and are so related to the claims arising under federal law that they form part of the same case or controversy.

9.      Venue is proper pursuant to 28 U.S.C. § 1391 because the injuries giving rise to this action happened in the Southern District of Texas and, on information and belief, all Defendants reside in the Southern District of Texas.

## III. PARTIES

10.     Plaintiff, Jana K. Landry ("LANDRY"), is the mother, next of kin, and personal representative for the estate of NELSON. LANDRY brings these claims individually and as successor in interest for NELSON. LANDRY is a competent adult who at all times relevant to this complaint resides in Harris County, Texas.

11.     Defendant Steven Sperry, ("SPERRY") is sued in his individual and official capacities and was at all times herein

   a.   An employee of the State of Texas.

   b.   The senior warden of the Texas Department of Criminal Justice Joe F. Gurney Transfer Facility ("Gurney Unit") in Huntsville, Texas.

   c.   The final policy-making official for the Gurney Unit and is responsible for making and enforcing its policies, procedures, and training.

12.     Defendant Bryan Collier, ("COLLIER") is sued in his official capacity and is at time of filing suit

a. An employee of the State of Texas.

b. The executive director of the Texas Department of Criminal Justice.

c. The final policy-making official for Texas Department of Criminal Justice and is responsible for making and enforcing its policies, procedures, and training.

13.    Defendant Harris County ("COUNTY") is a county, duly organized and existing under the laws of the State of Texas. Defendant COUNTY operates and is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents, employees, agencies, and departments, including the Harris County Jail ("Jail"), and their agents and employees. It may be served with process by serving its County Judge, the Honorable Ed Emmett, at 1001 Preston, Suite 911, Houston, TX 77002.

14.    Defendant Michael Seale, M.D., ("SEALE") was at all times herein a physician licensed to practice medicine in the State of Texas and an employee and/or agent of COUNTY and the other COUNTY Defendants. SEALE is sued in his individual capacity.

15.    Defendant Pilar Laborde-Lahoz, M.D., ("LABORDE") was at all times herein a psychiatrist and physician licensed to practice medicine in the State of Texas and an employee and/or agent of COUNTY and the other COUNTY Defendants. LABORDE is sued in her individual capacity.

16.    Defendant Conrad Gibby, M.D., ("GIBBY") was at all times herein a physician licensed to practice medicine in the State of Texas and an employee and/or agent of COUNTY and the other COUNTY Defendants. GIBBY is sued in his individual capacity.

17.    Defendant Syed Aziz ur-Rahman, M.D., ("RAHMAN") was at all times herein a physician licensed to practice medicine in the State of Texas and an employee and/or agent of COUNTY and the other COUNTY Defendants. RAHMAN is sued in his individual capacity.

18. Defendant Sunil Athavale, M.D., ("ATHAVALE") was at all times herein a physician licensed to practice medicine in the State of Texas and an employee and/or agent of COUNTY and the other COUNTY Defendants. ATHAVALE is sued in her individual capacity.

19. Defendant Sharon N. Lambi, P.A., ("LAMBI") was at all times herein a physician's assistant licensed in the State of Texas and an employee and/or agent of COUNTY and the other COUNTY Defendants. LAMBI is sued in her individual capacity.

20. Defendant Rosemary Ojih, R.N., ("OJIH") was at all times herein a registered nurse in the State of Texas and an employee and/or agent of COUNTY and the other COUNTY Defendants. OJIH is sued in her individual capacity.

21. SPERRY in his individual capacity, SEALE, LABORDE, GIBBY, RAHMAN, ATHAVALE, LAMBI, and OJIH are hereafter collectively referred to as "GOVT DEFENDANTS," and acted under color of state law at all relevant times herein.

22. Defendant David Cunningham ("CUNNINGHAM") on information and belief is a competent adult residing in Harris County, Texas. CUNNINGHAM can be served with process at 2814 Hamilton St., Houston, TX 77004.

23. Defendant Jed Silverman ("SILVERMAN") on information and belief is a competent adult residing in Harris County, Texas. SILVERMAN can be served with process at 1221 Studewood, Suite 200, Houston, TX 77008.

24. Plaintiff is unaware of the true names and capacities of defendants sued herein as DOES 1-10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names when ascertained.

25. Herein, all Parties identified as Defendants, including DOES 1-10, will be individually and collectively referred to as "Defendants" and/or "Defendant."

## IV. JURY DEMAND

26.     Plaintiff respectfully requests a trial by jury on all claims/issues in this matter that may be tried to a jury.

## V. STATEMENT OF FACTS

27.     NELSON

   a.   Was born July 27, 1977, and was age 37 years when he died.

   b.   Used and was addicted to methamphetamine.

   c.   Lived in a home shared with several people, some of whom also used and were addicted to methamphetamine.

   d.   Did not have exclusive control over any area of the home including his bedroom.


THE ARREST AND TRIAL OF MATTHEW NELSON

28.     NELSON

   a.   On Jan. 17, 2012, had his home in Harris County, Texas, searched by police for firearms and ammunition pursuant to a search warrant related to a robbery.

   b.   Had methamphetamine in a pill container under his mattress seized by police.

   c.   Neither owned nor possessed the methamphetamine.

   d.   Was arrested for possession with intent to deliver a controlled substance weighing more than 4 grams and less than 200 grams.

   e.   Faced a potential sentence of five to ninety-nine years and a potential fine of ten thousand dollars ($10,000).

   f.   Was released on bond.

29.     Attorneys CUNNINGHAM and SILVERMAN, each

   a.   Were hired to represent NELSON for a total of thirty thousand dollars ($30,000).

b. Were engaged in a joint venture in their representation of NELSON.

c. Had a fiduciary relationship with NELSON.

d. Knew that NELSON claimed to be innocent of the charges.

e. Knew or had reason to believe that NELSON was innocent of the charges.

f. On Friday, Sept. 12, 2014, conducted *voir dire*.

g. Failed to request additional peremptory challenges until after the jury was impaneled due to their admitted mistake.

h. Moved to suppress the methamphetamine but failed to argue therein that (1) no documents were stolen from the pawn shop, (2) the search warrant stated that documents were stolen based on an assumption of the affiant, therefore (3) the search warrant deliberately or recklessly omitted material information in violation of *Franks v. Delaware*,[1] and (4) the police officer who executed the search warrant relied on the affiant's assumption instead of probable cause when he searched a pill container for stolen documents because he did not believe that the pill container contained either firearms or ammunition.

i. Failed to make a *Franks v. Delaware* motion to suppress the methamphetamine before or during trial and therefore failed to preserve the same issue for any appeal.

j. On Sept. 15, started trial in state district court.

30. Over the course of trial, CUNNINGHAM and SILVERMAN, each

a. Failed to call NELSON's girlfriend to testify in NELSON's defense knowing or having reason to believe that she owned and legally possessed the methamphetamine that NELSON was arrested for.

---

[1] 438 U.S. 154 (1978)

b. Failed to call NELSON's girlfriend to testify in NELSON's defense knowing that she was willing and able to testify that she owned and possessed the methamphetamine.

c. Failed to call any witness for NELSON's defense.

d. Told NELSON that incriminating evidence was found on NELSON's phone.

e. Knew or had reason to believe that any incriminating evidence on NELSON's phone would not be admitted.

f. Knew that NELSON was under extreme stress due to his arrest, trial, potential conviction, and potential sentence.

g. Caused NELSON additional stress by failing to suppress the methamphetamine, failing to call witnesses in his defense, and notifying him that the incriminating evidence would not be admitted.

h. Told NELSON of a 5-year sentence plea bargain offered by the prosecutor and encouraged by the judge.

i. Used their fiduciary relationship, authority and expertise as attorneys, and the trust they knew NELSON had in them to pressure NELSON to accept the plea bargain.

j. Tried to scare NELSON into accepting the plea bargain by raising their voices, berating him, and calling NELSON "stupid" if he did not accept the plea bargain.

k. Believed NELSON's case was unwinnable due in large part to their own mistakes.

l. Advised NELSON that his only option was to accept the plea bargain.

m. Advised NELSON to accept the plea bargain only to satisfy their own personal, economic, and/or reputational interests in ending the case without a conviction.

31. On Sept. 16, 2014, NELSON left trial without leave and became a fugitive.

32. CUNNINGHAM and SILVERMAN, each

a. Failed to request a continuance to allow time to locate NELSON.

b. Proceeded with trial *in abstentia*.

c. Asked the jury to sentence NELSON to 20-25 years in prison.

33.    NELSON

a. Was convicted and sentenced to sixty-three (63) years on Sept. 17, 2014.

b. Hired Randy Schaffer as his attorney after he was convicted.

34.    Mr. Schaffer

a. Was paid $25,000 by LANDRY for NELSON's post-conviction relief.

b. Contacted CUNNINGHAM and SILVERMAN for assistance in NELSON's relief.

35.    CUNNINGHAM and SILVERMAN

a. Were instructed by NELSON to assist Mr. Schaffer.

b. Were instructed by NELSON to send Mr. Schaffer his case file.

c. Had a fiduciary duty to assist Mr. Schaffer.

d. Refused or failed to promptly send Mr. Schaffer his case file.

e. Refused to voluntarily assist Mr. Schaffer due in part to impede any investigation,

review, or discovery of their own professional malpractice or breach of fiduciary duty.


MATTHEW NELSON'S FIRST SUICIDE ATTEMPT

36.    On Nov. 14, 2014, NELSON was arrested and taken to Harris County Jail.

37.    During inmate processing, NELSON

a. Climbed on top of a counter.

b. Jumped backwards off the counter.

c. Attempted to break his neck on the concrete floor.

d. Landed on his back on the concrete floor.

    e.   Broke his backbone at L5.

    f.   Was transported to Ben Taub Hospital for diagnosis and treatment.

    g.   Returned to Harris County Jail.

38.    NELSON, while in custody of Harris County Jail,

    a.   Was diagnosed with and suffered from high blood pressure and atrial fibrillation.

    b.   Repeatedly submitted medical request forms complaining about his depression.

    c.   On or about Nov. 15, 2014, was placed on suicide watch.

    d.   On or about Nov. 15, 2014, was prescribed <u>tramadol</u> by GIBBY. Tramadol has known psychiatric side-effects including causing depression.

    e.   On or about Nov. 16, 2014, was prescribed <u>fluoxetine</u> by ATHAVALE. Fluoxetine has known psychiatric side-effects including inducing self-injury, causing suicidal thoughts, and in the early phases of treatment it may induce suicidal attempts.

    f.   On or about Nov. 26, 2014, was removed from suicide watch.

    g.   On or about Nov. 28, 2014, told LANDRY that he wanted to kill himself, who promptly told Jail of NELSON's threat.

    h.   On or about Dec. 9, 2014, was prescribed <u>amlodipine</u> by SEALE.

    i.   On or about Dec. 11, 2014, had his health assessed by OJIH. OJIH reported that NELSON's emotional response to incarceration was "normal" and that NELSON twice attempted to commit suicide by hitting his head on the floor and by cutting himself.

    j.   On or about Dec. 27, 2014, was prescribed <u>amlodipine</u> by RAHMAN.

    k.   On or about Jan. 1, 2015, was prescribed <u>metoprolol</u> by LAMBI. Metoprolol has known psychiatric side-effects including causing depression.

l.  On or about March 12, 2015, told LANDRY that he was going to kill himself, who promptly notified Jail of NELSON's threat.

<u>Matthew Nelson's Second Suicide Attempt</u>

39.  On March 13, 2015, NELSON

a.  Cut his neck with a razor and bled profusely.

b.  Had attempted to commit suicide.

c.  Was reported by Harris County Jail as having attempted to commit suicide.

d.  Was treated for the cut at Harris County Jail's infirmary.

e.  Had stitches used to close his wound.

f.  Was sent back to his prison cell.

g.  On or about March 14, 2015, was prescribed <u>mirtazapine</u> by LABORDE. Mirtazapine has known psychiatric side-effects including causing depression, psychotic depression, suicidal ideations, and suicidal behavior.

h.  On or about March 21, 2015, was prescribed <u>lurasidone</u> by LABORDE. Lurasidone has known psychiatric side-effects including causing suicidal ideations.

40.  On or before March 30, 2015, and continuing until his death, NELSON was suffering from restless legs and insomnia caused by his medication.

<u>Matthew Nelson's Third Suicide Attempt</u>

41.  On March 30, 2015, NELSON

a.  Ran head-first into a jail wall made of cinderblock or similar material. (*See* Exhibit 1, post-mortem photograph of head injury caused by this act.)

b.  Fractured his skull.

c.  Had attempted to commit suicide.

d.   Was restrained by jail staff.

e.   Was taken to the jail infirmary.

f.   Was returned to his jail cell.

<u>MATTHEW NELSON'S SUICIDE</u>

42.   On April 1, 2015, NELSON

a.   Was transferred to the Gurney Unit.

b.   At or about 2:30 p.m., was moved to his cell.

c.   At or about 3:00 p.m., requested to be removed from his cell due to feeling

claustrophobic.

d.   At or about 4:00 p.m., was provided his meal.

e.   At or about 5:16 p.m., was found by the correctional officer in charge hanging from a

bed sheet tied to a light fixture in his prison cell.

f.   Was reported to have died at or about 6:42 p.m. due to asphyxiation.

## VI. CAUSES OF ACTION

### CAUSE No. -1-
***First, Fourth, Eighth, and Fourteenth Amendment Violations | 42 U.S.C. § 1983***
***Alleged against GOVT DEFENDANTS, each in their individual capacity***

43.   GOVT DEFENDANTS knew or must have known that

a.   NELSON's medical and mental health condition was life threatening but treatable.

b.   NELSON could not care for himself nor advocate for his urgently needed psychiatric

intervention, hospitalization, and appropriate suicide-watch protocols.

c.   NELSON urgently required access to and delivery of needed medical and mental health

care, treatment and monitoring for his life threatening but treatable mental health

condition, and that pending such treatment he needed to be on suicide precautions at the Jail and Gurney Unit.

d. NELSON required constant supervision by Jail and Gurney Unit staff at intervals appropriate to his degree of risk of self-harm.

e. NELSON required regular intervention, hospitalization, and a higher level of care than was offered at the Jail and Gurney Unit.

44. GOVT DEFENDANTS

a. Deprived NELSON, an inmate, of the rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments to the U.S. Constitution.

b. Denied NELSON proper and necessary care for his demonstrated risk of suicide.

c. Intentionally or through their deliberate indifference allowed others to subject NELSON to delay and denial of access to medical or mental health care for a serious but treatable medical or mental health condition.

d. Deprived NELSON of the rights, privileges, and immunities secured by the Fourth Amendment to be free from unreasonable seizure and the Fourteenth Amendment right to substantive due process by and through their deliberate indifference denying and refusing him necessary medical and mental health care and treatment, and/or causing others to deny and/or delay medical and mental health care and treatment.

e. Had a duty to provide NELSON with reasonable security, transfer to inpatient psychiatric hospitalization, housing on suicide watch, and other appropriate suicide precautions to accommodate his serious medical and mental health conditions.

f. Ignored, delayed, or denied NELSON's urgently needed medical and psychiatric care and treatment due to, *inter alia*, misreporting his emotional response as "normal."

45.     As a result of GOVT DEFENDANTS' deliberate indifference and/or callous disregard for NELSON's need for medical care and treatment, and their disregard and indifference to this need, LANDRY and NELSON suffered damages, pain and suffering, emotional distress, anxiety, depression, confusion, disorientation, loss of relationships, loss of life, and deprivation of constitutional rights.

46.     GOVT DEFENDANTS violated 42 U.S.C. § 1983 and deprived LANDRY of the following clearly established and well-settled constitutional rights protected by the First, Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution, including but not limited to:

    a. The right to be free from deliberate indifference to NELSON's serious medical and mental health needs while in custody as an inmate as secured by the Fourth, Eighth, and Fourteenth Amendments.

    b. The right to be free from wrongful governmental interference with medical and psychiatric care, as secured by the First, Eighth, and Fourteenth Amendments.

    c. The right to be free from being given medications that induce or increase the likelihood of self-harm, suicidal ideations, or suicide attempts while simultaneously not being cared for and kept secure to ensure that no self-harm would be attempted, as secured by the Eighth and Fourteenth Amendments.

47.     GOVT DEFENDANTS subjected LANDRY to their wrongful conduct, depriving LANDRY of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of LANDRY (individually and on behalf of NELSON) and others would be violated by their acts and/or omissions.

48.     As a direct and proximate result of GOVT DEFENDANTS' acts and/or omissions as set forth above, LANDRY sustained injuries and damages as described herein.

49.     The conduct of GOVT DEFENDANTS entitles LANDRY to punitive damages and

penalties allowable under 42 U.S.C. § 1983.

***CAUSE No. -2-***
***Violations of Title II of the ADA and the Rehabilitation Act***
***Alleged against SPERRY, COLLIER, each in their official capacity, and COUNTY***

50.     At all material times and as described herein, NELSON was

   a.  An individual with a disability.

   b.  Otherwise qualified to participate in or receive the benefit of SPERRY's, COLLIER's,

       and COUNTY's jail and mental health services, programs, or activities.

   c.  Either excluded from participation in or denied the benefits of SPERRY's, COLLIER's,

       and COUNTY's services, programs or activities or was otherwise discriminated against

       by SPERRY, COLLIER, and COUNTY. Such exclusion, denial of benefits or

       discrimination was by reason of his disability.

51.     Congress enacted the Americans with Disabilities Act ("ADA") upon finding *inter alia*

that "society has tended to isolate and segregate individuals with disabilities" and that such forms

of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101.

52.     NELSON was a "qualified individual" with a brain disorder, mental illness, disability

and/or medical impairments that limited and/or substantially limited his ability to care for

himself and control his mental or physical health condition as defined under the ADA. 42 U.S.C.

§ 12131(2). Section 504 of the Rehabilitation Act ("RA") of 1973, 29 U.S.C. § 794. 28 C.F.R.

42.540(k).

53.     Defendants SPERRY and COLLIER in their official capacity and COUNTY are each a

public entity under Title II of the ADA. 42 U.S.C. § 12131(1)(A). Title II of the ADA applies

generally to jail "services, programs, or activities." 42 U.S.C. § 12132. Therefore, Defendants

SPERRY, COLLIER, and COUNTY jails and mental-health services are covered under Title II of the ADA.

54.     Defendants SPERRY, COLLIER, and COUNTY are also liable through *respondeat superior* under Title II of the ADA for the unlawful acts of their agents and/or employees.

55.     Plaintiff is informed and believes, and thereon alleges, that SPERRY, COLLIER, and COUNTY receive federal assistance and funds, and are therefore subject to the Rehabilitation Act, 29 U.S.C. § 794.  SPERRY, COLLIER, and COUNTY are within the mandate of the RA that no person with a disability may be "excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity." 29 U.S.C. § 794.

56.     Under the ADA, SPERRY, COLLIER, and COUNTY are mandated to develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities, and to ensure that the personal and civil rights of persons who are receiving services under their control are protected.

57.     As described herein, SPERRY, COLLIER, and COUNTY failed to reasonably accommodate NELSON's disability in the course of jailing him and denying him medical care, causing him to suffer greater injury in the process than other inmates, including death. SPERRY's, COLLIER's, and COUNTY's failures to accommodate NELSON's disability include but are not limited to:

   a.  Causing the violation of NELSON's rights through all customs, policies, and practices identified above.

   b.  Failing to use lawful and appropriate policies, practices, and procedures for a mentally ill and/or emotionally disturbed person under the circumstances.

   c.  Failing to transfer NELSON to an inpatient psychiatric facility.

d. Failing to provide NELSON with competent and appropriate medical, mental health, and psychiatric care.

e. Failing to institute suicide precautions for NELSON.

f. Placing NELSON in isolated, segregated housing with no institutional observation or mental health follow-up.

g. Failing to develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities, and to ensure that the personal and civil rights of persons who are receiving services under its control are protected.

h. Failing to communicate NELSON's condition and suicide risk between transferring facilities.

i. Failing to inform NELSON with how to obtain competent and appropriate medical, mental health, and psychiatric care.

j. Failing to intervene after NELSON begged for help at each facility.

k. Other failures to provide accommodations as the evidence in this case may show.

58.     As a direct and proximate result of SPERRY's, COLLIER's, and COUNTY's violations of the ADA and RA, LANDRY sustained serious and permanent injuries and is entitled to damages, penalties, costs and attorney fees.

### CAUSE No. -3-
### Municipal and Supervisory Liability | Monell v. Dept. of Soc. Svcs., 436 U.S. 658 (1978)
### Alleged against SPERRY, COLLIER, each in their official capacity, and COUNTY

59.     The unconstitutional actions and/or omissions of GOVT DEFENDANTS, as well as other officers employed by or acting on behalf of the SPERRY, COLLIER, and COUNTY, on information and belief were pursuant to the following customs, policies, practices, and/or procedures of SPERRY, COLLIER, and COUNTY, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by SPERRY, COLLIER, and COUNTY:

a.  To deny inmates access to appropriate, competent, and necessary care for serious medical and psychiatric needs.

b.  To allow intake medical and mental health assessments to include conflicting information so that an inmate with regular and recent suicide ideations can be marked as having a normal emotional response to incarceration.

c.  To fail to transfer suicidal patients/inmates for inpatient psychiatric hospitalization.

d.  To prescribe medication, and fail to determine what other medications or interventions may be appropriate after medication has been proven not to stop suicide ideations and/or suicide attempts.

e.  To fail to properly classify, house and/or monitor inmates at risk of suicide or suffering from mental health disabilities, including placement on suicide watch with proper suicide precautions.

f.  To allow, encourage, and require unlicensed, inadequately trained and/or inadequately supervised staff to decide whether to place jail inmates on suicide precautions.

g.  To fail to institute appropriate training, policies, and procedures for the management of inmates at risk of suicide.

h.  To fail to institute appropriate training, policies, and procedures to coordinate inmate assessment, placement, suicide watch decisions, suicide precautions and care with medical and mental health services, jail physicians, jail psychiatrists and jail corrections staff, including such personnel at other jails or treatment facilities when inmates are transferred.

i.  To fail to provide medical or mental health care for inmates with serious medical and mental health needs.

j.  To fail to use appropriate and generally accepted jail procedures for handling and housing suicidal, mentally ill and/or emotionally disturbed persons, including, but not limited to, the standards of the National Commission on Correctional Health Care Standards for Health Services in Jails, and Texas Commission on Jail Standards.

k.  To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling mentally ill and/or emotionally disturbed inmates.

l.  To cover-up violations of constitutional rights by any or all of the following: (i) by failing to properly investigate and/or evaluate complaints or incidents related to the claimed customs, polices, practices, and procedures described above in subparagraphs (a) through (k); (ii) by ignoring and/or failing to properly and adequately investigate and discipline unconstitutional or unlawful activity at the Jail or Gurney Unit as described above in subparagraphs (a) through (k); and (iii) by allowing, tolerating, and/or encouraging deputies, jail personnel, medical and mental health personnel to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster Defendants' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct, by withholding and/or concealing material information.

m.  To allow, tolerate, and/or encourage a "code of silence" among State of Texas and COUNTY staff, whereby an agent or employee does not provide adverse information against a fellow agent or employee.

60.  SPERRY, COLLIER, and COUNTY, through their administrators, agents, and employees, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate,

manage, and discipline GOVT DEFENDANTS and their other agents and employees, with deliberate indifference to LANDRY's constitutional rights, which were thereby violated as described above.

61.     The unconstitutional actions and/or omissions of GOVT DEFENDANTS and other agents and employees of SPERRY, COLLIER, and COUNTY, as described above, were approved, tolerated and/or ratified by policy-making officers for SPERRY, COLLIER, and COUNTY, including GOVT DEFENDANTS. LANDRY is informed and believes, and thereupon alleges, the details of this incident have been revealed to the authorized policy makers within the State of Texas and COUNTY, and that such policymakers have direct knowledge of the fact that NELSON was unlawfully denied necessary care for his serious medical and psychiatric needs, among other rights and accommodations.  Notwithstanding this knowledge, the authorized policy makers within the State of Texas and COUNTY have approved of the conduct and decisions of GOVT DEFENDANTS in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of NELSON. By so doing, the authorized policy makers within the State of Texas and COUNTY have shown affirmative agreement with each Defendant's actions, and have ratified the unconstitutional acts of the Defendants.

62.     The aforementioned customs, policies, practices, and procedures, the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline, as well as the unconstitutional orders, approvals, ratification and toleration of wrongful conduct of SPERRY, COLLIER, and COUNTY, were a moving force and/or a proximate cause of the deprivations of LANDRY's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983.

63.    SPERRY, COLLIER, and COUNTY subjected LANDRY to their wrongful conduct, depriving LANDRY of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of LANDRY and others would be violated by their acts and/or omissions.

64.    As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of SPERRY, COLLIER, and COUNTY, LANDRY sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees, above, and punitive damages against SPERRY in his individual capacity.

*CAUSE No. -4-*
*Negligence*
***Alleged against SPERRY, COLLIER, COUNTY, and GOVT DEFENDANTS***

65.    SPERRY, COLLIER, COUNTY, and GOVT DEFENDANTS

   a.  Owed LANDRY the duty to act with reasonable care.

   b.  Owed LANDRY the duty to act with due care in the execution and enforcement of every right, law, and legal obligation.

66.    These general duties of reasonable care and due care owed to LANDRY by SPERRY, COLLIER, COUNTY, and GOVT DEFENDANTS include but are not limited to the following specific obligations:

   a.  To provide, or cause to be provided, prompt and appropriate medical and mental health care for NELSON.

   b.  To summon necessary and appropriate medical care for NELSON.

   c.  To refrain from unreasonably creating danger or increasing NELSON's risk of harm.

   d.  To transfer NELSON to an inpatient psychiatric facility.

e. To provide safe and appropriate jail custody for NELSON, including reasonable classification, monitoring and housing, and placing him on suicide watch with proper suicide precautions.

f. To use generally accepted law enforcement and jail policies and procedures that are reasonable and appropriate for NELSON's status as a suicidal, mentally ill and/or emotionally disturbed person with serious medical needs.

g. To refrain from abusing their authority granted them by law.

h. To refrain from allowing their medical contractors to have employees work beyond their scope of practice and without appropriate supervision.

i. To refrain from violating LANDRY's rights as guaranteed by the U.S. and Texas Constitutions, as set forth above, and as otherwise protected by law.

67. Additionally, these general duties of reasonable care and due care owed to LANDRY by SPERRY, COLLIER, COUNTY, and GOVT DEFENDANTS, include but are not limited to the following specific obligations:

a. To properly and reasonably hire, supervise, train, retain, investigate, monitor, evaluate, and discipline each person: (i) who was responsible for providing medical and mental health care for NELSON; (ii) who was responsible for the safe and appropriate jail custody of NELSON; (iii) who was responsible for properly and reasonably classifying, housing, and monitoring NELSON; (iv) who denied NELSON medical attention or access to medical and mental health care and treatment, and/or; (v) who failed to summon necessary and appropriate medical care for NELSON.

b. To properly and reasonably hire, investigate, train, retrain, supervise, monitor, evaluate, and discipline their employees, agents, and/or law enforcement officers to ensure that

those employees/agents/officers act at all times in the public interest and in conformance with the law.

 c. To institute and enforce proper policies, procedures and training for suicide prevention, to coordinate inmate assessment, placement, decisions, and care with the jail physicians and nursing staff, jail mental health staff, jail corrections staff, and between transferring facilities.

 d. To make, enforce, and at all times act in conformance with policies and customs that are lawful and protective of individual rights, including LANDRY's.

 e. To require medical providers to have properly licensed and credentialed staff, including Registered Nurses, perform intake medical assessments on inmates/patients.

 f. To require medical providers to refrain from prescribing medications to patients at risk of suicide while never having even seen the patient.

 g. To transfer acutely suicidal inmates/patients to an inpatient psychiatric facility.

 h. To refrain from making, enforcing, and/or tolerating any wrongful policies and customs set forth above.

68. Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to LANDRY.

69. As a direct and proximate result of SPERRY, COLLIER, COUNTY, and GOVT DEFENDANTS' negligence, LANDRY sustained injuries and damages, and against SPERRY, COLLIER, COUNTY, and GOVT DEFENDANTS is entitled to relief.

***CAUSE No. -5-***
***Wrongful Death | Tex.Civ.Prac.&Rem.Code §§ 71.001-71.112***
***Alleged against SPERRY, COLLIER, COUNTY and GOVT DEFENDANTS***

70. LANDRY is the next of kin and heir of NELSON, her son.

71.     The wrongful acts, neglect, and carelessness of SPERRY, COLLIER, COUNTY, and

GOVT DEFENDANTS as described herein proximately caused NELSON's death.

72.     NELSON had claims against SPERRY, COLLIER, COUNTY, and GOVT

DEFENDANTS before his death as described herein, and was entitled to bring these claims

against said Defendants had he lived.

73.     LANDRY has suffered and in reasonable probability will continue to suffer emotional

distress, mental anguish, loss of society and companionship, advice and counsel, as well as

funeral expenses.

### CAUSE No. -6-
### *Negligent Cause of Condition that Constitutes Nuisance*
### *Alleged against SPERRY in his individual and official capacities, and COLLIER*

74.     NELSON, all inmates in the custody of the Texas Department of Criminal Justice who

are at risk of suicide, and all current and future inmates that potentially includes the entire public

at large, each have a right to occupy their prison cell and be free from dangerous conditions.

75.     SPERRY and COLLIER created, maintained, or failed to make prison cells safe from

inmates known to have suicidal ideations or who have attempted to commit suicide, namely, to

install or cause to be installed light fixtures in prison cells that can be used to facilitate suicide by

hanging. Further, SPERRY and COLLIER directly or indirectly caused said prison cells to have

other instruments that facilitate hanging such as bed sheets.

76.     These light fixtures induce suicide attempts in inmates who are at risk of attempting

suicide when combined with other instruments such as bed sheets.

77.     These light fixtures may be proper in the prison cell of an inmate who has no suicidal

intent but they pose danger and unreasonable risk to life of NELSON and all inmates who are at

risk of suicide or may later develop a risk of suicide.

78.     SPERRY and COLLIER knew or should have known that NELSON and all inmates who are at risk of suicide would use the light fixtures to secure bed sheets, belts, or other instruments in order to commit suicide. SPERRY and COLLIER created an unreasonable risk of injury.

79.     NELSON committed suicide because of his suicidal ideations that SPERRY and COLLIER knew or should have known about, and the light fixture and bed sheets in NELSON's prison cell, in such manner that the light fixture created an attractive nuisance.

80.     The light fixtures constitute an ongoing danger to all inmates who are now or may later be at risk of suicide.

### CAUSE No. -7-
### Medical Malpractice | Tex.Civ.Prac.&Rem.Code Chapter 74
### Alleged against SEALE, LABORDE, GIBBY, RAHMAN, ATHAVALE, and LAMBI

81.     SEALE, LABORDE, GIBBY, RAHMAN, ATHAVALE, and LAMBI are healthcare providers.

82.     These Defendants, each,

   a.  Owed NELSON a duty of care as every physician and physician's assistant owes their patient where patient agrees to be treated by their physician or physician's assistant, and independently owed NELSON a duty of care as NELSON was an inmate in custody of COUNTY and these Defendants were contracted by COUNTY to treat NELSON.

   b.  Are liable for the negligent acts of other healthcare provider Defendants for all prescriptions, other actions and omissions, as they each had access to NELSON's medical and psychiatric history, including his history of attempted suicide, and either (a) prescribed to him medication that have known potential side effects of inducing and increasing a patient's risk of suicide, suicide attempts, and self-harm, or (b) failed to stop NELSON's prescriptions for these medications because NELSON continued to have suicidal ideations and attempted suicide well after these medications were prescribed.

c. Prescribed and caused these medications to be administered without ensuring that NELSON would be properly monitored and secured against further suicide attempts.

d. Prescribed and caused these medications to be administered as an inferior alternative to inpatient or outpatient psychiatric care even after knowing that these medications were not working to stop NELSON's suicidal ideations and attempts at suicide.

e. Failed to provide NELSON with psychological help that could have helped make him safe from self-harm and suicide attempts, such as inpatient hospitalization or outpatient psychotherapy and counseling.

f. Was unreasonable and did not act as a prudent physician or physician's assistant would under the circumstances as described herein; departed from the accepted standards of medical and psychiatric care and safety; and therefore breached their duty to protect and treat NELSON by violating the standard of care.

83. Prescribing and administering drugs with known potential side effects of inducing or increasing the risk of self-harm and attempted suicide made it foreseeable that a patient who is already at risk of self-harm and attempted suicide would again attempt to kill himself.

84. Further, continuous use of said drugs that are demonstrably ineffective with a suicidal patient combined with a lack of other appropriate patient care such as inpatient hospitalization or outpatient talk therapy is the functional equivalent of giving said person a loaded gun.

85. The acts and omissions of these Defendants proximately caused an unreasonable risk to NELSON, made NELSON's psychological condition unsafe, and were the cause if not a substantial factor in causing NELSON's suicide.

*CAUSE No. -8-*
**Breach of Fiduciary Duty**
*Alleged against CUNNINGHAM and SILVERMAN*

86.     NELSON had a fiduciary relationship with CUNNINGHAM and SILVERMAN, his attorneys.

87.     CUNNINGHAM and SILVERMAN, each, breached the fiduciary relationship when they failed to act with integrity, fidelity, and loyalty as described herein, including but not limited to (a) their joint failure to disclose the professionally incompetent representation that was offered in exchange for the $30,000 fee to represent NELSON, and (b) their joint efforts to scare NELSON into pleading guilty to a crime they knew or should have known he did not commit with such forceful language, behavior, and misrepresentation of evidence, to put NELSON in a state of duress and panic that *inter alia* caused NELSON to believe that his case was unwinnable and/or CUNNINGHAM and SILVERMAN would not zealously defend him that caused him to become a fugitive, and (c) their joint effort to scare NELSON into pleading guilty in order to conceal their own professional incompetence in how they defended NELSON from said crime.

88.     NELSON suffered from mental anguish and economic damages as a result of the actions and omissions by CUNNINGHAM and SILVERMAN.

*CAUSE No. -9-*
*Survival | Tex.Civ.Prac.&Rem.Code §§ 71.021, 71.022*
*Alleged against All DEFENDANTS*

89.     LANDRY is the personal representative and heir of NELSON, her son.

90.     NELSON had claims against all DEFENDANTS before his death as described herein, and was entitled to bring these claims against said Defendants had he lived.

## VII. DAMAGES

91.    As a direct and proximate result of each Defendant's acts and/or omissions as set forth

above, LANDRY sustained the following injuries and damages, past and future, among others:

   a.   NELSON's loss of life, pain and suffering, emotional distress, mental anguish.

   b.   Violation of NELSON's constitutional rights.

   c.   NELSON's medical and hospital expenses, coroner's fees, funeral and burial expenses.

   d.   Loss of support and familial relationship, including loss of love, companionship,

         comfort, affection, society, counsel, services, solace, and moral support.

   e.   Pain and suffering, including emotional distress and mental anguish.

   f.   Economic damages.

## VIII. REQUEST FOR RELIEF

92.    WHEREFORE, LANDRY requests that this Court enter judgment in favor of herself

individually and as next of kin and the personal representative of NELSON, and against each

Defendant, jointly and severally, on all counts, and for the following additional relief:

   a.   Actual damages that may be allowed under state and/or federal law in an amount

         according to proof and which is fair, just, and reasonable.

   b.   Punitive damages that may be allowed under state and/or federal law which is fair, just,

         and reasonable. Punitive damages are not sought against SPERRY or COLLIER in their

         official capacity, nor COUNTY.

   c.   Exemplary damages against SPERRY and COLLIER in their official capacity,

         COUNTY, and GOVT DEFENDANTS, pursuant to TEX.CIV.PRAC.REM.CODE §§

         71.021, 71.022; GOVT DEFENDANTS for medical malpractice; and CUNNINGHAM

         and SILVERMAN.

d.   Economic damages of not less than $55,000 against CUNNINGHAM and SILVERMAN for money they received directly and for money LANDRY paid Mr. Shaffer in her attempt to save her son's life.

e.   Reasonable attorney fees and costs of suit pursuant to 42 U.S.C. § 1988, TEX.CIV.PRAC.REM.CODE §§ 71.021, 71.022.

f.   All other damages, penalties, costs, interest, and attorney fees as allowed by 42 U.S.C. §§ 1983, 1988, and 12205; Title II of the ADA; 29 U.S.C. §§ 794 and 794a; Texas survival statutes, and as otherwise may be allowed by state and/or federal law;

g.   Respondeat superior liability pursuant to ADA and state law;

h.   Interest, both pre- and post-judgment, as permitted by law;

i.   Such other and further relief as the Court may deem just and appropriate.


Respectfully submitted,

*/s/ Jerold D. Friedman*
Jerold D. Friedman
*Attorney for Plaintiff*
California SBN 290434
SDTX Federal ID 2117436

LAW OFFICE OF JEROLD D. FRIEDMAN
17515 Spring-Cypress Rd.
Suite C-360
Cypress, TX 77429
(281) 810-8812
fax (281) 667-3506
jerry@activistlaw.com



