United States District Court
Southern District of Texas
**ENTERED**
December 08, 2017
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| JANA K. LANDRY, Individually, and as next of kin and personal representative of Matthew Conard Nelson (Deceased), | § § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. H-17-370 |
| TEXAS DEPT. OF CRIMINAL JUSTICE, *et al.*, | § § § § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This is a prison suicide case. This motion to dismiss requires the court to decide whether the plaintiff, Jana Landry, the mother of the deceased, Matthew Conard Nelson, has stated claims under 42 U.S.C. § 1983 and state law against the doctors who treated her son. The doctors, Dr. Pilar Laborde-Lahoz, M.D. and Sunil Athavale, M.D., have jointly moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). A key issue as to the § 1983 claim is qualified immunity. After careful review of the parties' briefs, responses, and replies, and the applicable law, the court grants the defendants' motion to dismiss, without leave to amend because amendment would be futile. The reasons are explained below.

**I.    Background**

The allegations and background are taken from the Second Amended Complaint. (Docket Entry No. 41). In November 2014, Matthew Nelson, then 36 years old and addicted to methamphetamine, was convicted for possessing methamphetamine and sentenced to 63 years in prison. After his trial, Nelson was held at the Harris County Jail, awaiting his assignment and

transfer to a Texas state prison. During inmate processing, Nelson tried to commit suicide by climbing up on a counter and jumping backwards. Nelson landed on his back, breaking one of his vertebrae. Officers took him to the hospital for treatment and returned him to the Harris County Jail. The next day, officers placed Nelson on suicide watch, but removed him from the watch less than two weeks later.

Dr. Athavale examined Nelson in the jail and prescribed fluoxetine, an antidepressant known to cause side effects that can include "inducing self-injury, causing suicidal thoughts, and . . . induc[ing] suicidal attempts." (Docket Entry No. 41 at 8). Despite the potential side effects and Nelson's suicide attempt, Dr. Athavale did not recommend reimposing suicide watch. During this period, Nelson began attending group psychotherapy, but he stopped because his back pain "made sitting in the group insufferable." (Docket Entry No. 41 at 8). Twice during the next three months, Nelson told his mother that he wanted to kill himself. Landry alleges that she reported these threats to the jail.

Nelson attempted suicide a second time by cutting his wrist with a razor. Harris County Jail physicians treated Nelson in the infirmary after the attempt and sent him back to his cell, but there is no indication of Dr. Athavale's involvement. Harris County Jail nurse Rosemary Ojih assessed Nelson's mental health and reported that his response to incarceration was "normal," while noting that he had twice attempted suicide. (Docket Entry No. 41 at 9). The jail medical staff did not put Nelson back on suicide watch.

In March 2015, Nelson attempted suicide for the third time since arriving at the jail by cutting his neck with a razor. Dr. Laborde-Lahoz examined Nelson and told him that she thought his suicide attempt was a "rehearsal." (Docket Entry No. 41 at 10). Dr. Laborde-Lahoz prescribed mirtazapine, an antidepressant with side effects that can include "depression, psychotic depression,

2

suicidal ideations, and suicidal behavior." (Docket Entry No. 41 at 10–11). About a week later, Dr. Laborde-Lahoz also prescribed lurasidone, a medication for bipolar disorder, which has side effects that can include suicidal ideations. After both appointments, Dr. Laborde-Lahoz approved Nelson to return to the general jail population and did not recommend suicide watch.

About a week later, Nelson made a fourth suicide attempt by running head-first into a cinderblock wall. Harris County Jail physicians treated Nelson in the infirmary and again sent him back to his cell. Once again, there is no indication that the treating physicians at the jail involved Dr. Laborde-Lahoz or Dr. Athavale or that they put Nelson on suicide watch.

The following day, April 1, 2015, officers transferred Nelson to the Texas Department of Criminal Justice Gurney Unit, where he was placed in an "administration separation cell." That same day, a TDCJ employee found Nelson in his prison cell, dead from asphyxiation. He had hanged himself with a bed sheet tied to a light fixture.

In February 2017, Landry filed suit against twelve defendants, alleging six causes of action. Drs. Athavale and Laborde-Lahoz jointly moved to dismiss Landry's complaint under Rule 12(b)(6) for failure to state a claim against them. Landry's claims against the doctors are for: (1) violations of the Eighth and Fourteenth Amendments under § 1983; (2) medical malpractice; (3) wrongful death; and (4) a survival action.

## II. The Legal Standard for Dismissal

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require

3

'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions,'" and "a formulaic recitation of the elements of a cause of action will not do." *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* (quoting *Twombly*, 550 U.S. at 558) (internal quotation marks and alteration omitted).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (Rule 15(a) "evinces a bias in favor of granting leave to amend")*; Great*

4

*Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). A court in its discretion may deny a motion to amend for futility if the amended complaint would fail to state a claim upon which relief could be granted. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016). The decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court." *Pervasive Software Inc. v. Lexware GMBH & Co.*, 688 F.3d 214, 232 (5th Cir. 2012).

### III. Analysis

#### A. The § 1983 Claim for Violations of the Eighth and Fourteenth Amendments

Landry asserts a § 1983 claim against both Drs. Athavale and Laborde-Lahoz, alleging that they deprived Nelson of his Eighth Amendment right to be free of cruel and unusual punishment by acting with deliberate indifference to Nelson's medical needs and his right to substantive due process.[1] Drs. Athavale and Laborde-Lahoz argue that Landry fails to state a claim that overcomes their qualified immunity defense.

Qualified immunity shields government officials performing discretionary functions from liability for civil damages if their conduct does not violate clearly established rights known to an objectively reasonable official. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*,

---

[1] Because Landry alleges constitutional violations that occurred after Nelson was convicted, the appropriate claim is under the Eighth Amendment. *See, e.g., Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000) ("Unlike convicted prisoners, whose rights to constitutional essentials like medical care and safety are guaranteed by the Eight Amendment, pretrial detainees look to the procedural and substantive due process guarantees of the Fourteenth Amendment to ensure provision of these same basic needs.").

5

526 U.S. 603, 614 (1999); *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016). A state actor is entitled to qualified immunity if the challenged conduct was objectively reasonable in light of the legal rules that were clearly established when the acts occurred. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2004). A court considers whether "the facts alleged show the officer's conduct violated a constitutional right," and whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194 (2001); *see also Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). A case may be dismissed based on either step in the qualified immunity analysis. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

When a defendant invokes qualified immunity, the plaintiff must demonstrate that the defense does not apply. *McClendon*, 305 F.3d at 323. A district court must first find "that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). "A plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.* Conclusory allegations and unsubstantiated assertions cannot overcome the defense. *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007).

Neither Dr. Athavale nor Dr. Laborde-Lahoz disputes that a prisoner has a clearly established right to constitutionally adequate medical care under the Eighth Amendment.[2] *See, e.g.*, *Rogers v.*

---

[2] *See Estelle v. Gamble*, 429 U.S. 97, 102–103 (1976) (internal quotations and citations omitted):

> The [Eighth] Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . against which we must evaluate penal measures. Thus, we have held repugnant to the Eighth Amendment punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society. . . . These elementary principles establish the government's obligation to provide medical care for those

*Boatright*, 709 F.3d 403, 409 (5th Cir. 2013). Both doctors argue that Landry fails to state sufficient facts that would show that they violated Nelson's right to receive this level of medical care. These doctors argue that Landry fails to identify how either was responsible for preventing Nelson's suicide or the specific steps either failed to take to provide constitutionally adequate treatment. Both doctors argue that Landry makes conclusory allegations that they acted with deliberate indifference, but that she failed to allege specific facts sufficient to make that showing.

Landry must allege specific facts that, if proved, would be sufficient to show that: (1) the doctors had actual knowledge that Nelson faced "a substantial risk of serious harm"; and (2) the doctors acted "with deliberate indifference to that risk." *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* "A plaintiff may carry his burden [to show knowledge] by alleging that the particular risk was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it.'" *Gray v. Brazoria Cty.*, No. 3:16-CV-109, 2017 U.S. Dist. LEXIS 25225, at *10-11 (S.D. Tex. Feb. 23, 2017) (quoting *Hinojosa*, 807 F.3d at 665). Knowledge must be established as to each officer individually. *Id.*

Landry argues that the two doctors had actual knowledge of a substantial risk that Nelson would commit suicide. Landry alleges that "county [and] medical defendants" knew that substantial

---

whom it is punishing by incarceration.

7

risk based on both a widespread pattern of attempted inmate suicides every year and Nelson's prior attempts and statements of suicidal intent.

Even if the court assumes that the doctors knew that Nelson had made three attempts at suicide over a little over four months, and that the doctors knew the side effects of the medications, Landry fails to allege sufficient facts to state a claim of deliberate indifference. "[O]fficials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer*, 511 U.S. at 844

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). To demonstrate deliberate indifference to serious medical needs, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle,* 429 U.S. at 106. A doctor's decision not to provide additional medical treatment "is a classic example of a matter for medical judgment," rather than an example of deliberate indifference. *Id.* at 107.

In *Estelle v. Gamble*, the Supreme Court considered whether a prison's medical director acted with deliberate indifference. 429 U.S. at 107. The Court observed that the plaintiff, a state prisoner, "was seen [for his back pain] by medical personnel on 17 occasions spanning a three-

month period." *Id.* The plaintiff alleged that the medical director should have done more "by way of diagnosis and treatment, and suggest[ed] a number of options that were not pursued." *Id.* The Court held that the medical director did not act with deliberate indifference because his decision not to take additional measures was not a decision to wantonly and unnecessarily inflict pain, and it was not cruel and unusual punishment. *Id.* "At most it [was] medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act." *Id.* So too, here.

Landry alleges that Drs. Athavale and Laborde-Lahoz should have taken further measures to prevent Nelson's suicide. Specifically, Landry alleges that they should have provided psychotherapy to Nelson when the prescribed drugs were ineffective, recommended suicide watch, and followed up with Nelson because he had expressed suicidal ideations. The record, however, is inconsistent with deliberate indifference.

Landry states that Nelson could have, and for a time did, attend psychotherapy, but he voluntarily stopped. Nelson had the option of continued group therapy, but he chose to stop attending. The defendants' failure to force him to attend or participate in therapy when he chose not to is not deliberate indifference. Landry contends that between November 2014 and March 2015—a four-month period—the doctors prescribed Nelson three different psychiatric drugs, one by Dr. Athavale and two by Dr. Laborde-Lahoz. During that same period, Dr. Athavale continued to treat Nelson "either by interacting with him directly or by having his treatment extended and prescription refilled." (Docket Entry No. 41 at 8). Landry further alleges that Dr. Laborde-Lahoz treated Nelson from March 13, 2015 through April 1, 2015, the day of Nelson's suicide. Landry's allegations demonstrate that both doctors provided Nelson ongoing medical treatment. Nelson received medical treatment for the injuries caused by his suicide attempts, and the two doctors prescribed medications to address his underlying mental health issues. While that treatment did not prevent his suicide, the

9

treatment decisions—the choice of drugs and dosages—do not rise to the level of deliberate indifference. *See, e.g.*, *Domino*, 239 F.3d at 756 (the psychiatrist did not act with deliberate indifference because "members of the psychiatric unit were monitoring [the decedent's] condition" and a "mental health professional scheduled counseling sessions for [the decedent] even though" the decedent did not attend). Nor is the failure to order ongoing suicide watch deliberate indifference on the part of these defendants on this record, given the allegations that Drs. Athavale and Laborde-Lahoz were not on the scene when Nelson made the suicide attempts and that he was promptly taken to the infirmary. Instead, other medical personnel treated Nelson, assessed his condition, and did not order suicide watch.

Landry's complaint does not allege sufficient facts to show that the two moving doctors "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs," as required to claim deliberate indifference. *Domino*, 239 F.3d at 756 (quoting *Johnson*, 759 F.2d at 1238). Landry's allegations allege dissatisfaction with the type and degree of Nelson's treatment that, even if negligent, does not rise to the high bar of deliberate indifference. *Estelle,* 429 U.S. at 106; *see also Estate of Henson v. Krajca*, 440 Fed. Appx 341, 344 (5th Cir. 2011) ("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."). Landry fails to allege sufficient facts to state a claim for deliberate indifference. The doctors' motion to dismiss is granted as to Landry's § 1983 claims.

### B. The Medical-Malpractice Claim

Landry asserts a state-law medical-malpractice claim against both doctors, alleging that their conduct and negligent medical treatment caused Nelson's suicide. To survive a motion to dismiss a medical-malpractice claim, the plaintiff must specifically allege sufficient facts that, if proven

would show that: (1) the defendant had a duty to comply with a specific standard of care; (2) the defendant breached that duty of care; (3) the plaintiff was injured; and (4) the defendant's breach proximately caused the plaintiff's injury. *See Price v. Divita*, 224 S.W.3d 331, 336 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (citing *IHS Cedars Treatment Ctr. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)).

The doctors do not dispute that they had a duty to comply with a specific standard of care or that Nelson was injured. But both doctors argue that Landry fails to state facts sufficient to allege that the doctors breached their duties of care or proximately caused Nelson's death. Even if Landry pleaded facts sufficient to establish a breach of the applicable standard of care, she pleads insufficient facts to demonstrate the causation required to state a claim.

To plead causation, a plaintiff must allege facts that would demonstrate that "based upon reasonable medical probability, . . . and '[t]he quantum of proof required is simply that it is more likely than not that the ultimate harm or condition resulted from such negligence.'" *Rio Grande Reg'l Hosp., Inc. v. Villarreal*, 329 S.W.3d 594, 608 (Tex. App.—Corpus Christi 2010, pet. granted) (quoting *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 400 (Tex. 1993)). The plaintiff's harm must be the foreseeable result of the defendant's conduct and the defendant's conduct must have in fact caused the plaintiff's harm. *Price*, 224 S.W.3d at 336. Neither foreseeability nor cause-in-fact can "be satisfied by mere conjecture, guess, or speculation." *Mason*, 143 S.W.3d at 798–99.

A harm is foreseeable if "a person of ordinary intelligence would have anticipated the danger caused by" the defendant's conduct. *Price*, 224 S.W.3d at 336. The defendant is not required to "anticipate the precise manner in which an injury will occur once he has created a dangerous situation through his negligence," but the general danger—rather than the exact sequence of events—must be foreseeable. *Villarreal*, 329 S.W.3d at 607.

11

Landry alleges that the two doctors could foresee the general danger that Nelson could commit suicide. Landry alleges that it was foreseeable that Nelson, an inmate with a recent history of suicidal behavior who had made threats to kill himself, was at risk of suicide if he took prescription drugs "with known potential side effects of inducing or increasing the risk of self-harm and attempted suicide." (Docket Entry No. 41 at 33). The doctors allegedly knew of Nelson's history of self-harm and suicidal behavior based on his prior attempts at the Harris County Jail. Based on Landry's allegations, a person with ordinary intelligence could foresee that Nelson would commit suicide if he was not appropriately treated, and placed on suicide watch. The first prong is met.

A defendant is the cause-in-fact of the plaintiff's injury only if the defendant's breach of the standard of care "was a substantial factor in causing the injury 'without which the harm would not have occurred.'" *Villarreal*, 329 S.W.3d at 607 (quoting *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 784 (Tex. 2001)). A plaintiff does not establish cause-in-fact merely by alleging that the defendant's conduct created a condition that made the harm possible. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). Instead, a plaintiff must allege facts that would show that the defendant's conduct was "the proximate, and not the remote, cause of the resulting injuries . . . [and] justify the conclusion that such injury was the natural and probable cause of the result thereof." *Id.* (quoting *Boyd v. Fuel Distribs., Inc.*, 795 S.W.2d 266, 272 (Tex. App.—Austin 1990, writ denied). The defendant's conduct cannot be too far removed from the plaintiff's injuries. *Mason*, 143 S.W.3d at 799.

Landry alleges that the doctors' conduct was a substantial factor, if not the direct cause, of Nelson's suicide. But the causal chain leading to Nelson's suicide started well before these doctors began treating Nelson. Landry alleges that Nelson attempted suicide at least once before Dr.

12

Athavale treated him and at least three times before Dr. Laborde-Lahoz treated him. Nelson was predisposed to suicidal behavior before he arrived at the County Jail. He interacted with many different jail and TDCJ officials and received treatments from a number of different medical providers during his time in custody. The doctors prescribed medications after he had already tried to commit suicide and threatened to try again. Other medical personnel made the judgment not to reimpose a suicide watch. Landry's allegations that Drs. Athavale and Laborde-Lahoz's conduct was a substantial factor in Nelson's suicide fail to demonstrate adequate causation. The causal chain has many links, and the doctors' conduct is but one. Landry's medical-malpractice claim is dismissed.

### C. The Wrongful Death Claim

Landry asserts a wrongful death claim against the doctors, alleging that, as a result of their negligence, Landry suffered loss of future care, maintenance, and support from Nelson, along with a loss of his companionship and mental anguish. Under Texas law, "[a] person is liable for damages arising from an injury that causes an individual's death if the injury was caused by the person's or his agent's or servant's wrongful act, neglect, carelessness, unskillfulness, or default." TEX. CIV. PRAC. & REM. CODE ANN. § 71.002(b). Landry bases her wrongful death claim on the doctors' alleged medical negligence. For the reasons stated above, Landry has failed to plead sufficient facts to allow this court to infer that the doctors proximately caused Nelson's death, an essential element of a medical malpractice claim. Because Landry fails to state a claim for medical malpractice, she fails to state a claim for wrongful death.

### D. The Survival Action

Landry asserts a survival claim on Nelson's behalf, alleging that he died due to the doctors' neglect, deliberate indifference, and other wrongful acts. Under Texas law, a cause of action for

13

personal injury survives the death of the injured "to and in favor of the heirs, legal representatives, and estate of the injured person." TEX. CIV. PRAC. & REM. CODE ANN. § 71.021. Because Landry's complaint fails to allege sufficient facts to state a claim under § 1983, a claim for negligence, or other actionable wrongful acts by either Dr. Athavale or Dr. Laborde-Lahoz, she fails to state a claim for a survival action.

## IV.  Conclusion

Landry's claims against Dr. Athavale and Dr. Laborde-Lahoz—claims two, four, five, and six in Landry's second amended complaint, (Docket Entry No. 41)—are dismissed. Because the complaint has already been amended twice, there is no basis to find that additional repleading would cure the deficiencies. The dismissal is with prejudice because further amendment would be futile.

SIGNED on December 8, 2017, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge